**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellant,*

v.

CESAR VALDEZ-SANTOS,
        *Defendant-Appellee.*

No. 05-10360

D.C. No.
CR-02-00104-LKK

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior Judge, Presiding

Argued and Submitted
April 6, 2006—San Francisco, California

Filed August 10, 2006

Before: Alfred T. Goodwin, Betty B. Fletcher, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge B. Fletcher

## COUNSEL

McGregor W. Scott, United States Attorney; Carolyn K. Delaney, Assistant United States Attorney; and Phillip Talbert, Assistant United States Attorney, Sacramento, California, for the appellant.

Fred N. Dawson, Fair Oaks, California, for the appellee.

## OPINION

B. FLETCHER, Circuit Judge:

Appellant Cesar Valdez-Santos was convicted in the Eastern District of California of [1] conspiracy to possess and distribute a listed chemical with knowledge or reasonable cause to believe it would be used to manufacture methamphetamine, 21 U.S.C. §§ 846 and 841(c)(2), and [2] possession and distribution of a listed chemical with knowledge and reasonable cause to believe that it would be used to manufacture methamphetamine, 21 U.S.C. § 841(c)(2). After conviction, the district court granted Valdez-Santos's motion for acquittal on the conspiracy conviction. It also granted his motion for a change of venue and new trial on the possession charge, and transferred the case to the Central District of California. The government appeals the grant of the motion to change venue. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

## I.

Valdez-Santos's arrest arose out of a DEA investigation of a methamphetamine trafficking organization which culminated in the bust of a large methamphetamine lab in Rio Linda, California.[1] The organization was headed by Jesus

---

[1]Rio Linda is located near Sacramento in the Eastern District of California.

Arreguin. In February of 2002, Arreguin sent his brother-in-law, Jose Magana, to Los Angeles[2] to sell some methamphetamine and to seek the pseudoephedrine needed to manufacture more of the drug. Magana had difficulty acquiring pseudoephedrine from the usual sources and discussed the problem with Arreguin in many cell phone conversations that were monitored by law enforcement agents. Ultimately, Arreguin and his assistant, Jorge Ayala, traveled to Los Angeles, and Arreguin, Ayala, and Magana met with a pseudoephedrine source they had not used previously, Valdez-Santos.

Valdez-Santos drove Magana's pick-up truck to a residence in Lynwood and returned with three boxes of pseudoephedrine pills. Arreguin, Ayala, and Magana then returned to Sacramento, leaving the pills at Arreguin's house until they were used, shortly after, to manufacture methamphetamine. Law enforcement agents executed a search warrant on the Rio Linda property while the methamphetamine was being manufactured, arresting Arreguin, Magana and multiple methamphetamine "cooks." Valdez-Santos was arrested in May of 2002, while leaving his residence in Compton.

## II.

Claims of improper venue in criminal cases are reviewed de novo. *United States v. Williams*, 291 F.3d 1180, 1188 (9th Cir. 2002); *United States v. Liang*, 224 F.3d 1057, 1059 (9th Cir. 2000). Though the underlying legal basis is reviewed de novo, a district court's ruling on a motion for change of venue is reviewed for abuse of discretion. *United States v. Corona*, 34 F.3d 876, 878 (9th Cir. 1994).

[1] The right to trial in the proper venue is protected by the Constitution. *See* U.S. Const. art. III, § 2, cl. 3 ("The Trial of all Crimes . . . shall be held in the State where the said Crimes

---

[2]Los Angeles is located in the Central District of California, as are the cities of Lynwood and Compton that we refer to later in the opinion.

shall have been committed . . . ." ); *id.* amend. VI ("[T]he accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . ." ). Rule 18 of the Federal Rules of Criminal Procedure codifies these constitutional protections:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice.

When a given offense is continuing, venue can properly be had in the district where it was commenced, continued, or was completed. 18 U.S.C. § 3237(a) ("[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.").

**[2]** Possession is a continuing crime, for which venue properly lies in any district in which the possession took place. *United States v. Barnard*, 490 F.2d 907, 911-912 (9th Cir. 1973). The government's position is that because an aider and abetter to a crime may be tried as a principal, 18 U.S.C. § 2, an aider and abetter to a continuing crime may be tried anywhere a part of the crime occurred. We have upheld venue in a district in which individuals other than the defendant possessed drugs, so long as the defendant aided and abetted that possession by his participation in the chain of possession in another district.

**[3]** For instance, in *United States v. Mendoza*, 108 F.3d 1155 (9th Cir. 1997), we held that venue was proper in a district where the defendant had not possessed drugs, but where he had aided and abetted the possession of others in that dis-

trict. There, three defendants charged with aiding and abetting the possession of cocaine with intent to distribute argued that venue in the Western District of Washington was improper. They were alleged to have sold cocaine in California to a third party who then transported the drug to Washington for distribution. We held that venue was proper in the Western District of Washington, because "the crime of drug possession with intent to distribute, or aiding and abetting such possession, occurs where the principal commits it." *Id.* at 1156.[3]

**[4]** *Mendoza*, and similar cases from other circuits,[4] sug-

---

[3]The indictment in *Mendoza* specifically charged the defendants with aiding and abetting the substantive offense. *Id.* at 1155-56. Here the indictment did not charge that Valdez-Santos aided and abetted the possession of others. This is a distinction without a difference, however, since "aiding and abetting is embedded in every federal indictment for a substantive crime." *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005); *United States v. Armstrong*, 909 F.2d 1238, 1241 (9th Cir. 1990) ("Aiding and abetting is implied in every federal indictment for a substantive offense."); *United States v. Gaskins*, 849 F.2d 454, 459 (9th Cir. 1988) (same).

Moreover, Valdez-Santos knew from the government's trial brief that the government was relying on aiding and abetting as a theory of liability and the district court properly instructed the jury on it, without objection. *See United States v. Long*, 866 F.2d 402, 408 (11th Cir. 1989) (allowing venue in a similar case in part because "[t]he judge properly gave the jury an aiding and abetting instruction").

[4]*See, e.g.*, *Long*, 866 F.2d at 408 (holding that a defendant could be tried in Alabama for counterfeiting charges of possession and conspiracy even though she was never in Alabama, because the evidence showed she aided a principal who had possession there); *United States v. Medina-Ramos*, 834 F.2d 874, 877-78 (10th Cir. 1987) ("One who has never been physically present in a district may nonetheless be prosecuted there for possession if he aids and abets a principal who has either actually or constructively possessed a controlled substance in the jurisdiction."); *United States v. Buckhanon*, 505 F.2d 1079, 1083 (8th Cir. 1974) (holding that venue was proper in Minnesota, though the defendant was never present there, when "the government's entire case was based on the theory that the defendant had aided and abetted [her co-defendant] in his illegal possession [in Minnesota] and was chargeable as a principal"). *But see United States v. Tingle*, 183 F.3d 719, 727 (7th Cir. 1999) (holding venue

gest that venue in the Eastern District was proper given the plain facts present here. Valdez-Santos was convicted of possession and distribution of a listed chemical with knowledge or reasonable cause to believe that it would be used to manufacture methamphetamine. Valdez-Santos sold the pseudoephedrine to Arreguin, Ayala, and Magana in Los Angeles, who then transported the drug to the Sacramento area where they began the methamphetamine manufacturing process. While Valdez-Santos's connection to the substantive offense ended in the Central District, he aided and abetted the continuation of the offense in the Eastern District. The district court properly gave the jury an aiding and abetting instruction, and the jury could have convicted Valdez-Santos under this theory of liability.

[5] Given this evidence, we are comfortable concluding that Valdez-Santos could properly be tried in the Eastern District of California. We are not, however, endorsing a broad and sweeping theory of venue any time an individual is charged with aiding and abetting a drug crime. *Cf. United States v. Hernandez*, 189 F.3d 785, 791 (9th Cir. 1999) (cautioning against allowing "venue [to] become the 'government's choice' rather than a constitutional guarantee"). In criminal cases, venue implicates "deep issues of public policy," *United States v. Johnson*, 323 U.S. 273, 276 (1944), and serves for criminal defendants as a "safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place," *United States v. Cores*, 356 U.S. 405, 407 (1958). As the government emphasized at oral argument, it is the *facts* of this case that make venue in the Eastern District proper. Finally, testimony introduced at trial also sug-

---

improper in a district where defendant committed no acts notwithstanding "the fact that the government alleged that [the defendant] aided and abetted the crime of distribution of cocaine base to [the principal]," because "the cocaine base was distributed to [the principal] only in Illinois, and any aiding and abetting done by [the defendant] was done in Illinois.").

gests a link to the Eastern District that reached beyond this single offense. At trial, Valdez-Santos's dealer, Fernando Rios Ramirez, testified that Valdez-Santos was a large-scale dealer in narcotics who purchased thousands of pseudoephedrine pills from him up to three times a week. During the transaction at issue, Valdez-Santos and Magana recognized one another from Mexico, and Valdez-Santos gave Magana his telephone number. These facts provided a basis for the jury to infer that the defendants contemplated a continuing business relationship with repeat sales. We do not hold that an aider and abetter to a continuing crime can in all circumstances be tried in any district where the substantive offense took place, but we do find here a sufficient connection to the Eastern District to make venue proper.

## III.

The decision of the district court is REVERSED.